27710. HARPER v. THE STATE.

Decided September 29, 1939.

*Ben Smith, Philip Newbern,* for plaintiff in error.

*H. C. Morgan, solicitor-general,* contra.

MacIntyre, J. Charlie Harper, was indicted on February 20, 1939, for cattle-stealing alleged to have been committed on July 20, 1936. He was convicted on February 21, 1939. His motion for new trial was overruled, and he excepted.

The prosecutor, R. J. Taft, a farmer of Atkinson County, testified that he owned about two hundred head of cattle ranging along Pudden Creek in said county, apparently of a better grade of cattle than the average range cattle of that section. "The cattle that I missed all ranged in Atkinson County, up and down the creek from Grady Paulk's place to Miss Guessie Wall's. Mostly they were around there in the old fields of Grady Paulk's. At times I had improved my stock of cattle, had some red Poole males not full blood, about a quarter or something like that. I missed cows all along before 1936, in 1936, and after then. I couldn't say how many I missed. Sometimes I would miss one or two a week, and sometimes as many as seven or eight at a time. I missed some cattle about tobacco-curing time (June and July) in 1936, some heifers; some people may call them red, or red and brindle. At that time my cattle were in pretty fair condition on the range. I had some young heifers. I kept my old cows pretty well sold out, and bought mostly young heifers from one and one half to two years old. I didn't sell any heifers to anybody or give anybody permission to haul them away. I had one male that ranged there, what I would call a red brindle, and had a wart over his eye, and

I missed him. I missed him and the heifers about the same time they all ranged up in that range. They were marked smooth crop in one ear. . . I had been missing cattle all along. . . I couldn't tell you how many cattle I missed in 1936, but I missed several. I couldn't tell you how many cows I owned at that time. I should have had 200 head and upwards. I couldn't tell you how long it had been before I got the information from Grady Paulk that I had lost some cattle. I had been losing my cattle something like four years. I didn't see the cattle described in the bill of indictment in the truck, but I have some of my cattle in the woods of the same description."

Taft saw and talked with Grady Paulk, a witness for the State. Grady Paulk had lived in the territory where Mr. Taft's cattle ranged, for a good many years, knew something of the type of cattle owned by Taft, and knew Taft's cattle mark, a smooth crop in one ear. On a Saturday when Taft talked with Paulk he learned from Paulk that Paulk had seen a truck that week, a few days before they talked, and that the trailer attached to the truck contained four or five cattle of the description of Taft's, and in his mark. This defendant and Mr. Merritt were operating the truck, and parked it in Willacoochee. Grady Paulk and the policeman of Willacoochee observed the cattle in the truck, and as witnesses they described the cattle to the jury and the circumstances which agreed in almost every detail except that the policeman did not remember the cattle mark, whereas Paulk did. Both agreed that they were red or red and brindled heifers, and one bull of the same color with a wart over one of his eyes, that they ranged in ages from two to two and one half or perhaps three years of age, and that all the cattle in the trailer were fat and in good condition. There were a few other cattle in the truck, but the witnesses did not know those cattle and therefore paid little attention to them, except that they did notice that they were poor and in bad condition and of a scrub type. On the afternoon in question Paulk saw the cattle in a trailer parked on a street in Willacoochee, and thereafter on the same afternoon asked the defendant if he had been buying cattle from Mr. R. J. Taft. The defendant replied that he had not; that the cattle had been purchased from Zeke Nolan. Taft, on gathering from Grady Paulk the information aforesaid, went that night to the home of Zeke Nolan, eight miles distant,

and interrogated him about selling any cattle to the defendant Harper or his companion, Denny Merritt, who was indicted jointly with the defendant. From the testimony of Mr. and Mrs. Nolan the jury were authorized to find that, about two or three months before this, they sold some cattle to Denny Merritt and Buster Merritt, but that these were not the cattle in question.

We recognize the rule that "While recent possession of stolen goods unexplained will justify a conviction for larceny, the mere possession of goods several months subsequent to the time they were alleged to have been stolen and a failure to satisfactorily account for such possession will not alone authorize a conviction." *Calloway* v. *State*, 111 *Ga.* 832 (36 S. E. 63). We also recognize the rule that "in all cases where such possession [of stolen property] is relied on to establish guilt, it must either be shown to have been recent, or else it must be strengthened by other evidence." *Turner* v. *State*, 114 *Ga.* 45, 48 (39 S. E. 863). "It does not necessarily follow that because one is found in the possession of stolen goods he is a thief, but the fact that he was so found is a circumstance which may always go to the jury." *Turner* v. *State*, supra. Proof of recent possession of stolen property alone would authorize a conviction; but proof of possession of stolen property, which is not recent, would not alone authorize a conviction, but it is a circumstance which may always go to the jury; and in a circumstantial-evidence case, such as the instant case, the incriminatory circumstance of possession plus other incriminatory circumstances, which are sufficient to comply with the circumstantial-evidence rule for conviction in criminal cases, will authorize a conviction. *McLendon* v. *State*, 71 *Ga.* 864; *McAfee* v. *State*, 68 *Ga.* 823; *Goen* v. *State*, 24 *Ga. App.* 370 (100 S. E. 769). The defendant contends that the property in question was not sufficiently identified, and that the judge erred in charging the jury on recent possession, in that the evidence did not show that the cattle in question had recently been missed or stolen when they were alleged to have been found in the defendant's possession. As to the question as to the sufficiency of the identification, it seems to us that where a person has a great many cattle on a very large and expansive and open range, about the only way he can keep up with his cattle is by having them marked with his "cattle mark," and this mark is generally the safest test as to

which are his cattle on this open range. See Code, § 62-104. However, in the instant case, the bull alleged to have been stolen was not only marked in the prosecutor's "cattle mark" but also had a further distinguishing mark or identity, to wit, a wart over one eye. We are of the opinion that the jury were authorized to find from the evidence that the cattle in question were, recently after the theft or soon thereafter, found in the possession of the defendant. Moreover, there was the further incriminating circumstance of the defendant's untrue statement that he had bought the cattle from the Nolans.

There is a special ground based on newly discovered testimony of McCajah Hoke Paulk, whose affidavit was submitted in connection with this ground. The State by way of counter-showing introduced several affidavits denying the statements in the affidavit of McCajah Hoke Paulk, one of which tended to show prejudice on the part of this witness against his brother Grady Paulk, who had testified on the trial; and another of which tended to show that McCajah Hoke Paulk married a first cousin of one of the joint defendants. Thus a conflict arose as to the material facts upon which this ground was based, and as to the credibility of the witnesses; and " a reviewing court will not, except in a case of manifest abuse of discretion, reverse the finding of the trial judge." *Fouraker* v. *State,* 4 *Ga. App.* 692 (62 S. E. 116). We can not in this case say that the judge erred in believing the persons who swore in the State's affidavits, in preference to the person who swore in the defendant's affidavit. We therefore can not hold that the court erred in overruling this ground based upon newly discovered evidence. *Hunt* v. *State,* 81 *Ga.* 140 (5) (7 S. E. 142); *Phillips* v. *State,* 59 *Ga. App.* 466 (1 S. E. 2d, 225).

The other grounds are not meritorious. The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*